Receipt Number
640332

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

EQUESTRIAN ESTATES LTD. PARTNERSHIP
A Michigan Limited Partnership, EQUESTRIAN
ESTATES II, LTD., a Michigan Corporation,
LIMITED PARTNERS, SHAREHOLDERS and
HEIRS,

Case: 2:06-cv-11262
Assigned To: Hood, Denise Page
Referral Judge: Capel, Wallace
Filed: 03-24-2006 At 04:37 PM
CMP EQUESTRIAN ESTATES V JAFFE RAIT
T HEUER ET AL (AWT)

       Individually, Jointly and Severally
       Plaintiffs,

)
)
)

vs

)
)

JAFFE RAITT HEUER & WEISS, PC, IRA JAFFE,
SHARON LADUKE, LAWRENCE DUDEK, HOWARD
SCHWARTZ, DIVERSIFIED PROPERTIES GROUP, LLC,
REDICO MANAGEMENT, INC. and JOHN DOES, AGENTS,
ASSOCIATES and ATTORNEYS TO BE ADDED
WHEN KNOWN,

)
)
)
)
)
)
)

       Jointly and Severally,
       Defendants.

)
)
)
)

COMPLAINT FOR
DAMAGES AND
INJUNCTIVE AND
DECLARATORY
RELIEF


PLAINTIFF DEMANDS A
TRIAL BY JURY

Francois M. Nabwangu (P61338)
Attorney for Plaintiffs
13255 Lakepoint Blvd
Belleville, MI 48111
(734) 485-8656

There are civil actions pending or resolved or cases involving other parties
arising out of the same transaction or occurrence alleged in the complaint,
which have been previously filed in this Court; in the case of Coleman v
Horton et al., where it was given docket no.: 05-73200 and was assigned
to the Hon. Julian cook, Jr.; and have been filed in the 3rd Circuit Court for
the County of Wayne, State of Michigan; in the case of Reed v Reed,
where it was given docket no.: 00-34452 DM where it was assigned to
Judges K. MacDonald, and J. Stempien; and have previously been filed
before the Michigan court of Appeals where it was given docket no."
248895; where it was assigned to Judges Markey, Fitzgerald and Owens,
and in the Circuit Court for the County of Oakland; in the case of
Equestrian Estates, Ltd., Partnership v AHR Packaging Consultant Corp.,
where it was given docket no.: 05-068749 CH; and filed in this Court in
the matter of Equestrian Estates Ltd., et al., v State of Michigan et al.,

where it was given docket mp., 05-73494, and assigned to the Hon. Arthur J. Tarnow; and In the Matter of Sharon Laduke before the Michigan Attorney Grievance Commission as to Coleman; and In the Matter of Hon. K. MacDonald before the Michigan Judicial Tenure Commission as to Coleman, as to Johnson, and as to Frazier, In the Matter of Jason Horton before the Michigan Attorney Grievance Commission as to Coleman

## COMPLAINT

### VIOLATION OF THE U.S. CONSTITUTION; DUE PROCESS; EQUAL PROTECTION; 42 USC § 1983; FRAUDULENT CONVEYANCE; QUIET TITLE; SLANDER OF TITLE; TORTIOUS INTERFERNECE WITH BUSISNESS RELATIONSHIP; ABUSE OF PROCESS; INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS; FRAUD; BREACH OF FIDUCIARY DUTY; CIVIL RACKETEERING 18 USC § 1961 (c); RACKETEERING CONSPIRACY 18 USC § 1961 (d);

EQUESTRIAN ESTATES LTD., EQUESTRIAN ESTATES II, LTD., on behalf of the limited partners, shareholders, heirs and assigns, by and through its undersigned attorneys, for their COMPLAINT state as follows:

### INTRODUCTION

This is an action to recover economic damages caused by the fraudulent and tortious conduct of Defendants, and to restrain Defendants and their co-conspirators from engaging in fraud and other unlawful conduct in the future, and to compel Defendants to relinquish improper billing for the proceeds of their conduct.

This action is brought pursuant to the United States Constitution, as Amended, and certain Civil Rights Statutes ensuring due process and equal protection of the laws;  Title 42 United States Code § 1983; as well as certain civil provisions of Title 18, United States Code § 1961 through 1968, entitled the Racketeer Influenced and Corrupt Organizations ("RICO") statute that authorizes private civil actions to compensate for, restrain, and prevent certain unlawful racketeering conduct.

Defendants, principals and associated parties of the Jaffe Raitt Heuer & Weiss PC law firm ("the Jaffe Firm") have, repeatedly and consistently during the course of many years, in connection with their

2

representation of Verladia Reed, in the divorce case of Reed v Reed, Wayne County Circuit Court No.: 00-032452, Macdonald K., and then Stempien J., presiding., engaged in a criminal scheme involving: fraud and self dealing, obstruction of justice, abuse of process, and conversion of land worth over $35,000,000.00 (after improvements) owned by Plaintiffs. Defendants repeatedly and consistently failed to disclose their conflicts of interest and self dealing which resulted in their client Horton, being appointed as receiver in the case Reed v Reed. Defendants failed to disclose Mr. Horton's complete lack of qualification, his incompetence to practice as a receiver, and his complete ignorance of the standards of receiver conduct and fiduciary duties; despite the fact that Horton's first case would be to handle a marital estate valued at $5,000,000.00 by the Jaffe Raitt Heuer & Weiss PC law firm. Ultimately, Horton proceeded against Plaintiffs' assets in the guise of exercising the authority conferred to him in the divorce proceedings, but Horton proceeded without posting a receiver bond as required by MCLA 600.2926 and without ever giving notice to Plaintiffs, the rightful owners of the property. Defendants improperly and surreptitiously obtained injunctive orders against Plaintiffs herein, who were the actual owners of the property and prevented them from intervening in the Reed v Reed litigation. Defendants and Horton consistently and repeatedly mislead the Court and the parties by failing to list the property for sale at appraised market value of $3,000,000.00, and thereafter sold the balance of the property for approximately $795,000.00 to companies represented by the Jaffe Firm, and/or controlled and operated by clients of the Jaffe Firm. Defendants thereafter sought to intimidate Gregory J. Reed, the respondent in the Reed v Reed litigation, and the then former general partner of Equestrian Estates limited partnership, by surreptitiously seeking unfounded orders and judgments for "sanctions" and attorneys' fees, and attempting to unlawfully "foreclose," on the resultant judgment liens against Gregory Reed's residence for fees: unlawful and unsubstantiated debts, in the amount of $150,000.00. In February 2005, the Court of Appeals found that the trial court had abused its discretion in awarding

attorneys fees without a hearing, and without any basis. Additionally, Defendants filed frivolous and wrongful garnishment actions. In doing so, Defendants abused process and obstructed justice in pursuing the unsubstantiated attorney fee award. The Jaffe Firm, similarly defrauded its client Verladia Reed in connection with the divorce in charging fictitious, fraudulent, and excessive legal fees of $680,000.00; for a divorce where the marital estate ultimately approximated $1,600,000.00, in order to leverage Verladia Reed's consent to the fire sale of the Equestrian L.P. property which the Jaffe Firm wanted control over, in order to sell the property to its client Diversified Properties. In furtherance of the scheme, Horton, supervised by Ira Jaffe of Redico, cherry picked 30 acres of prime property from the 383 acre parcel and sold it under market value, and sold the cherry picked parcel off in such a way as to diminish the value of the other 353 acres.

In all relevant respects, Defendants acted in concert with each other in order to further their fraudulent scheme. Beginning not later than January 2003, weeks after the divorce trial ended, the Defendants, their various agents, clients, subsidiaries, employees and co-conspirators, formed an "enterprise," ("the Enterprise") as the term is defined in 18 USC 1961(4). The Enterprise has functioned as an organized association-in-fact operated managed and controlled by the Jaffe Firm, and its partners and principals, named individual defendants herein, who participated in the scheme. Each Defendant has participated in the operation and management of the enterprise and/or has committed numerous acts to maintain and expand the Enterprise.

In order to avoid discovery of their fraudulent conduct and the possibility that they might be called to account for their conduct, Defendants published false reports and engaged in the fabrication of reports and opinions justifying and obfuscating their wrongdoing, they made deceptive statements concerning the value of the property and justifications for the sale, they concealed documentation of fair market value bids, and removed the project from any forum open to a public bid. Defendants committed

4

perjury on the witness stand once called to account for their scheme obfuscating and lying about their associations, intent, and justifications for Horton's actions. Additionally, Defendants made false statements supporting Horton's qualifications as "the most qualified" to be the receiver. This scheme included Defendants' endorsement of false and deceptive statements made under oath. The scheme involved alteration or distortion of the court record to cover their tracks, securing a supplemental injunctive order without notice or a hearing, incorporating Plaintiffs' property in the marital estate without establishing the property as a marital asset, without quieting known claims, without notice to Plaintiffs, and without a hearing in the divorce case. Receiver Horton did not post a bond as mandated by Court Order, and likewise sold the property without listing it as he had been ordered.

Defendants' tortious and unlawful course of conduct has caused Plaintiffs to suffer economic harm, but the scheme evidences that the Jaffe Firm has adopted a pattern and practice of racketeering activity which threatens to project said activity into the future, and further evidences that the activity itself and mechanisms by which it was carried out preexisted the instant fraudulent scheme. Unless restrained, the Jaffe Firm's fostering of various conflicts of interests and self dealing will never be brought to light. Defendants will simply duplicate the scheme in connection with other divorces involving transactions of large real estate property, and continue to prosper and profit from their unlawful and tortious conduct; unless restrained by this Court.

At all times pertinent and relevant herein, Jason Horton was acting as receiver, under color of Michigan law, appointed by and on behalf of the Wayne County Circuit Court.

## I. JURISDICTION

Jurisdiction in this action is predicated upon 28 USC 1331, and 18 USC 1964.

## II. VENUE

Venue in this action is predicated upon 18 USC 1965 and 28 USC 1391 (b) and (c).   Each Defendant, Defendant entity, or its predecessor or successor has engaged in business activities generally, and enterprise activities in the Eastern District of Michigan.  In addition, the subject property lies within the district, as well as the head offices of the Jaffe Firm.  Individual Defendants practice law, have been appointed as receivers or generally conduct business within the district.

### III.   PARTIES

1.     Equestrian Estates Limited Partnership, ("Plaintiff"), originally formed as a partnership in 1987, is a Michigan Limited Partnership. AHR Packaging assigned its holding company's interest under a Land Contract from Michigan Metro Girl Scouts to Equestrian Estates, heretofore ("the Property"). Plaintiff acquired legal title from Michigan Metro Girl Scout Council on  December 4, 1997 by warranty deed to 227 acres of land located in Springfield Township, Oakland County, Michigan, hereinafter (" the Property") described in (Exhibit A).  The Limited Partners (Plaintiffs) consist of four (4) members, Dr. Leroy Johnson, acting general partner, Attorney Gregory J. Reed, former general partner, who initially launched the partnership in 1987, Dr. Oswald Bostic and Lawrence Coleman a/k/a Lawrence Muhammad, who assigned 50% of his interest in fee to a 10 acre parcel of the partnership, all are notable community contributors (Exhibits G and H).

2.     Equestrian Estates II Ltd. is a Michigan Corporation, ("Plaintiff") Purchaser, and was formed by entering into a land contract with the Marlowe brothers, Sellers, in 1999 to acquire 156 acres of land contiguous or adjacent to the 227 acres of Equestrian Estates Ltd. Partnership located in Springfield Township, Oakland County (Exhibit C – Marlowe Land Contract).  The Shareholders ("Plaintiffs") of the Equestrian Estates II Ltd. Corporation are Rick Frazier and O'Neil Swanson.  They are businessmen and outstanding community contributors.

6

3.     Jaffe Raitt Heuer & Weiss PC, is a Michigan Professional Company, ("the Jaffe Firm") whose partner and founding member is attorney Ira Jaffe. Ira Jaffe is also the Chairman of Defendant Redico, Management, Inc,, a Michigan for profit corporation, whose business is property management. ("Redico") Redico also employs receiver Jason Horton as an executive.   Likewise Receiver Jason Horton, and the Purchase, Defendant Diversified Properties Group, LLC, a Michigan Limited Liability Company, ("Diversified Properties") are Jaffe Firm clients.

4.     Diversified Properties was created by Jaffe Firm attorneys, within weeks of the final trial date in the divorce case of Reed v Reed, in January of 2003, but a month prior to the final Judgment being entered, for the sole and exclusive purpose of executing the scheme to acquire Plaintiffs' land from the Receiver.

5.     Kathleen MacDonald, not a named Defendant, is a judge in Wayne County Circuit Court who presided over the divorce proceeding of Gregory J. Reed, Esq., and Verladia Reed, who was represented by Sharon LaDuke, Esq., of the Jaffe Firm.  Sharon LaDuke initiated the sale transaction with Judge MacDonald surreptitiously signing orders involving Plaintiffs and Lawrence Coleman, a limited partner, who were nonparties to the divorce proceedings.  The sale was made to Diversified Properties, a client of the Jaffe Firm, by using Jason Horton, the Receiver, also a client of the Jaffe Firm, without Plaintiffs' knowledge or approval and in violation of basic fiduciary principals and due process.

6.     Jason Horton (Non-Defendant) is a licensed but non-practicing real estate attorney, and has been so for his entire career.  Horton was appointed as a court receiver, by Kathleen MacDonald, after never having served in such a capacity in over thirty (30) years as a bar member.  Horton is an executive of Redico Management, a real estate development operation whose executive chairman is Ira Jaffe of the Jaffe Firm.  Jason Horton is also a client of the Jaffe Firm.  The Jaffe Firm has moved into the Redico company's office building and shares offices with Redico (Exhibit E).  Horton entered into a

7

sham sale for $795,000.00 by cherry picking property and devaluing the remainder, thereafter selling said property to Jaffe Firm clients. In doing so, Horton violated express provisions of the court's orders to list the property at the appraised value of $3,000,000.00 and otherwise engaged in a pattern of obstruction of justice.

7.      Sharon LaDuke (Defendant) is a veteran, skillful, licensed attorney who specializes in real estate and divorce matters. She represents Verladia T. Reed and is employed by the Jaffe Firm who recommended Jason Horton their client, of Redico, to Kathleen MacDonald as the "most qualified person" to be appointed as a Receiver for the Reed's marital estate. Plaintiff recently discovered that Horton's appointment in the instant case involving a five million ($5,000,000.00) dollar marital estate valued by Sharon LaDuke, was his first receiver appointment ever. Diversified Properties, yet another client of the Jaffe Firm, acquired the property of the Plaintiffs below 550% plus of the appraised 1000% and market value in absence of a public sale, in a transaction brokered by Defendant Schwartz and without Plaintiffs' knowledge or approval. Kathleen MacDonald did not inquire into the relationships of the parties before her, and thereafter refused to do so when a motion for inquiry was filed three times in April, August and December of 2004. *Kathleen MacDonald did recuse herself for the first time, after the Michigan Court of Appeals indicated she had "abused her discretion,"* in connection with her rulings in the case of Reed v Reed concerning the appointment of a receiver. Thereafter, ex parte communication instigated by Defendant LaDuke convinced Judge MacDonald to reassign herself to the case. *Judge MacDonald was forced to disqualify herself a second time after acknowledging a "personal bias" against Gregory Reed, the then former partner and divorce defendant, who had brought yet another recusal motion.*

8.      Lawrence Dudek (Defendant) is a licensed real estate attorney, specialist and former chairman of the Real Estate Section for the State Bar of Michigan, represents Jason Horton as his

counselor and advisor.  Lawrence Dudek's duty as an attorney advised Jason Horton that Plaintiffs' property **could not be sold "as is" but still prepared deeds and court documents** and carried out various scheming acts on behalf of Jason Horton to deprive Plaintiffs of their properties, and participated in the concealment of the Defendants' illegal scheme.

9.      Howard Schwartz (Defendant) is a licensed realtor and broker in Michigan and represents Jason Horton to publicly sell the 383 acres and who failed to use any diligence as a realtor in connection with the fraudulent sale, and failed to abide by the unlawful supplemental court order entered without a hearing or notice requiring a public listing of the property at appraised value.  Schwartz never disclosed to the court or the Plaintiffs that the property could not be sold "as is" nor did he publicly list the property.  Schwartz lent his imprimatur of legitimacy over a sale he knew personally and professionally to be a fraud and circulated the property only with a business associate.

## IV.  FACTS

10.      Equestrian Estates, a Michigan Limited Partnership, acquired legal title to 227 acres of land with a lake in Oakland County on December 4, 1997 located in Springfield Township, Michigan. The 227 acres was one of the largest tracts as a prospective development for a minority venture in Michigan.  The limited partners contributed monies from 1987 thru 1997 and paid off a land contract from the Michigan Metro Girl Scout Council (Exhibit A).  The partnership received its interest pursuant to an assignment of interest of AHR Packaging Consultant Corporation, a holding company with no assets in December 1997 (Exhibit B).  The purpose of the partnership is to develop the property for an upscale residential development.

11.      Thereafter, an adjacent contiguous parcel to Equestrian Estates development site, consisting of 156 acres became available.  One of the limited partners of Equestrian Estates Ltd. Partnership advised two (2) prospective shareholders of Equestrian Estates Corporation to be formed to

merge its resources and plans to acquire the 156 acres parcel for a joint development totaling 383 acres (Exhibit C). The corporation and partnership agreed to combine their acres for one of the largest developments to be owned by a minority group in the United States.

12.     In 2001, the 383 acre tract was appraised at nearly 3 million dollars by a court appraiser appointed by the court under Judge Kathleen MacDonald in a divorce proceeding involving one of the partners.

13.     The 227 acres was paid off by Equestrian Estates Ltd. Partnership in six years in 1997.

14.     On May 16, 2003, Gregory Reed one of the four Equestrian Estates Ltd. partners was divorced. The divorce court under Judge Kathleen MacDonald, never *gave notice to Plaintiffs nor did Defendants seek to join the Plaintiffs as parties, in furtherance of an ongoing scheme to sell off 383 acres of the Plaintiffs' land to Jaffe firm clients and associates in connection with the divorce proceedings and judgment on or about May 16, 2003.*

15.     Kathleen MacDonald maliciously included in the marital estate, in furtherance of Defendants' scheme to self deal, Plaintiffs' title and equitable interest in the property in her Opinion and Judgment, which was reversed for abuse of discretion on appeal (Exhibit D). Kathleen MacDonald and Sharon LaDuke, attorney of divorced wife had knowledge of Plaintiffs' deed and interest in the property. The Defendants and Judge MacDonald knew of the assignment by AIIR Packaging and knew of the Marlowe Land Contract to the 156 acres prior to appointing a court receiver. Nevertheless, Defendants sought, and surreptitiously had approved without due process by the judge, a "Supplemental Receivership Order," specifically enjoining Plaintiffs from intervening in the sale, without first establishing proper jurisdiction over the Plaintiffs' properties or Plaintiff (Exhibits A, B, C, D)

16.     On June 27, 2003, Kathleen MacDonald entered an order appointing Jason Horton to serve as a receiver and to take possession of the Oakland County property, one of the wealthiest counties

10

in the United States, in Springfield Township. Sharon LaDuke directed the court to sell the Plaintiffs' (nonparties to the divorce) properties and distribute 55% of the proceeds to the wife, Verladia Reed, and 45% to the husband, Gregory J. Reed. Kathleen MacDonald approved the sale without having the partnership and corporation as parties, and without acknowledging one partner's fee interest.

17.     Jason Horton is a client and/or was represented by Sharon LaDuke's law firm, the Jaffe Firm, who is also the attorney for Verladia Reed. The relationship between Horton, LaDuke, the Jaffe Firm, Redico and the buyers: Diversified Properties, was never disclosed in open court, or to Plaintiffs and the divorced party: Gregory J. Reed (Exhibit E – Walter Pookrum's Motion for Inquiry). The buyer of the property, Diversified Properties, is a client of Sharon LaDuke's firm. All the relationships were concealed to the divorced party and Plaintiffs who were not parties to the proceedings involving their land.

18.     After the June 27, 2003, receiver appointment, Jason Horton was to publicly list the property with a realtor and it was represented to have been listed with Howard Schwartz as realtor, but the property was never in fact publicly listed, nor advertised by the Realtor or Receiver. Jason Horton arranged to sell Plaintiffs' properties without due process or their knowledge in carrying out, under color of carrying out Kathleen MacDonald's court orders as requested by Sharon LaDuke, his own attorney. Howard Schwartz's report as to his findings that the property could not be sold or listed for sale since it was owned by third parties, was never disclosed and was otherwise obfuscated from the court.

19.     Defendants arranged to unlawfully sell the property consisting of 227 acres to one of the Defendants' clients of Sharon LaDuke's firm (the Jaffe Firm), Diversified Properties, and a third party for $780,000, 450-900% below the appraised and market value of the property. A prospective purchaser offered $4 million dollars and delivered the signed offer to Defendants and Kathleen MacDonald, and had delivered the offer to Jason Horton's and Sharon LaDuke's offices five weeks prior to the court

11

receiving the offer (Exhibit F). The court ignored the $4 million dollar offer and refused to consider it and any comparable sale price data adjacent to the 227 acre property (Exhibit F).

20.     Attorney Lawrence Dudek advised the receiver, Jason Horton, on August 3, 2003 and September 25, 2003, that the property could not be sold "as is" due to various interest holders, and the fact that Plaintiffs were the title holders. Nevertheless, Lawrence Dudek advised Jason Horton to continue to proceed with the sale of the nonparties interests, Plaintiff's properties without having clear title to the properties (Exhibit J). In connection therewith, Dudek prepared legal documents for filing and execution of the criminal transaction.

21.     Plaintiffs had received signed offers to acquire the 383 acres in excess of $4 million dollars and could not sell the property if the Plaintiffs wanted to do so due to the illegal interferences, encumbrances and a supplemental order entered without notice or a hearing and the conspiracy exercised by Defendants.

A.      **THE FORMATION OF THE ENTERPRISE AND THE NATURE OF THE CONSPIRACY**

22.     The Jaffe Firm is a law firm located in Oakland County, Michigan, which through its real estate and divorce sections and practice, was predisposed to self deal in precisely the means and mechanism as occurred here. The Jaffe Firm controls and manages certain client relationships, of both corporate entities and individual persons, which it failed to disclose, but operated and managed in order to facilitate the self dealing which occurred here. The association-in-fact enterprise, in the instant case, grew out of the predisposition of the Jaffe Firm to criminal self dealing, and was crystallized into a criminal enterprise when Attorney LaDuke recruited Horton, their client, to be a receiver. While Horton, an executive at Redico, was an attorney, he had only actually practiced law for two years since 1973. Nor had Horton been a receiver prior to this occasion, let alone ever understood the fiduciary duties and legal responsibilities of being a receiver, and Horton's actions were orchestrated by attorney

12

Sharon LaDuke and Ira Jaffe of the Jaffe Firm, also the Chairman of Redico. Horton brought Schwartz to the table to act as a realtor on the transaction and consulted with Dudek in attempts to cover the self dealing and conversion of the property, which was executed by the mechanism of cherry picking portions and under selling the remainder. The preserved communication between Dudek, Horton and Schwartz, indicates the scheme and reflects actual knowledge of the illegitimacy of the scheme and acts. The three discussed with LaDuke's legal strategy how to enter an order and enjoin Plaintiffs from rightfully intervening in the lawsuit by having Judge MacDonald surreptitiously sign an order "supplementing" the authority of the conservator without a notice or motion ever being filed. Defendants had their co-conspirator Horton commit perjury to conceal these facts while on the witness stand. Additionally, Horton failed to list the property at the appraised value as provided for in the order at $7,500 per acre.

23.     The fundamental goal of the Enterprise and conspiracy was to steal and convert Plaintiffs' assets of $10,000,000.00 of real property. To achieve this goal, Defendants used various mechanisms of fraudulent and deceptive practices, abused process, and ultimately obstructed justice to cover their tracks. Defendants fabricated e-mail, false documents, unlawful court orders, and other devices to conceal their steps to take Plaintiffs' property rather than provide full disclosure to the judge of their self dealings, conflicts of interest and their knowledge of the legitimate third party interest in the property, as well as legitimate high bidders, Defendants and their agents were determined in furtherance of the conspiracy to conceal their knowledge, sell and convert the property, despite having actual knowledge that the cherry pick and steal scheme was illegal.

24.     Defendants repeatedly sought to ensure that legitimate bids were never brought to light in a timely manner. In doing so, Defendants perpetrated a falsehood and deception upon the judicial system. In order not to be caught, Defendants made false and misleading statements legitimizing the

scheme, and took further acts such as never listing the property publicly, but only among their friends, obstructed justice and violated court orders.

25.    In order to have their client Verladia Reed compliant with a quick settlement, Defendants fraudulently inflated their legal bill to $680,000.00+, incurred over the Springfield property issues alone, thereby creating a fictitious debt in order to extort Ms. Reed's compliance and acquiescence.  The Defendants promised and fraudulently held out a 55% interest in the property as a carrot to continue to justify the fraudulent billing and to continue to justify unlawfully tying up the property in litigation, ultimately subjecting the property to their handpicked receiver- all in order to induce Ms. Reed's acquiescence with their strategy. The Defendants failed to disclose the self dealings of the receiver who sold the property to a limited liability company which the Jaffe Firm had put together for its client within 3 weeks after the client's divorce.

26.    Defendants engaged in these acts knowingly and intentionally with a common purpose. Through false and misleading documents, litigious efforts, violations of court orders, and perjured testimony, Defendants have sought to legitimize their actions.   Defendants deceptively withheld conflicted interests and self dealing, abused process to intimidate Gregory Reed, fabricated debts and liabilities to coerce compliance of their client, perjured themselves or requested that co-conspirators perjure themselves, circumvented due process, sought an illegal injunctive order, took steps to prevent discovery of the self dealing, and ultimately converted Plaintiffs' property.

27.    Despite Defendants' knowledge of the Receiver's various and conflicting interests, Defendants never sought to disclose the same to the Court.  Despite their actual knowledge of the legitimate third party claim and that the sale was not legal without resolving the same, Defendants never disclosed the same to the Court, nor filed actions to legalize the sale.  In every available judicial proceeding Defendants represented the transactions as legitimate.

14

28.     In contrast to the criminal conspirators, Plaintiffs had no actual knowledge of the sordid maze of relationships which masked the Defendants' self dealing and conversion scheme. At all times Defendants made false and misleading statements concerning the legitimacy of their actions, or took efforts to conceal from Plaintiffs the nature of the proceedings, despite the fact that the receiver had a legal duty and due process dictated, that the receiver bring a quiet title action concerning Plaintiffs' property rights.

29.     The Defendants never disclosed the Receiver's relationship to the Jaffe Firm, and furthered their scheme by not disclosing that Horton is an executive of Redico, a property management company whose chairman is Ira Jaffe of the Jaffe Firm, and where Redico is also the landlord for the Jaffe Firm. Likewise, Horton is personally a client of the Jaffe Firm, a fact which was undisclosed in the underlying divorce litigation. Additionally, Defendants never disclosed that the purchaser Diversified Properties, LLC was also a Jaffe Firm client.

## B.     SCHEME AGAINST EQUESTRIAN ESTATES LTD. PARTNERSHIP

30.     Equestrian Estates Ltd. Partnership was formed in 1987 by Gregory J. Reed as one of the general partners until 1998 who had a vision to construct a real estate development with horseback riding trails.

31.     Reed traveled throughout the United States visiting several known Equestrian sites with his architect. He later carried out the equestrian vision by joining forces with clients Dr. Leroy Johnson, ophthalmologist, current general partner, in 1987 and Dr. Oswald Bostic, heart specialist, in 1988. The partners invested some of their lifetime and retirement savings in the plan to develop a community as an asset for Oakland County and the State of Michigan.

32.     In 1988 Lawrence Coleman contributed monies and a significant tract of his land he acquired in 1984 to the Equestrian Estates development partnership.

15

33.     All four (4) partners of Equestrian Estates Ltd. Partnership exclusively paid off the purchase price to acquire the land from Michigan Metro Girl Scouts, Vendor. AHR holding company was the Vendee to the land contract that had no assets or monies in its entire existence. AHR's purpose was to hold the property until Equestrian Estates was formed in 1987.

34.     The partnership received a Warranty Deed in December 1997 after AHR assigned and released its holding company interest over to Equestrian Estates in 1997 at the closing in December (Exhibit A and B). *The "deed" and "assignment" were presented to the divorce court by Daniel Minkus, the Girl Scout Council's attorney, and to Kathleen MacDonald and Defendant Sharon LaDuke.*

35.     Kathleen MacDonald refused to take judicial notice of the "deed" and "assignment" or admit either document (deed and assignment) into evidence in furtherance of Kathleen MacDonald's and Sharon LaDuke's scheme to deprive Plaintiffs of their properties (Exhibits I and N).

36.     Equestrian Estates Ltd. Partnership was involved in a *condemnation proceeding in the 1990's to 2001 eventually assigned to Judge Pamela Harwood in Wayne County Circuit Court.*

37.     One of the partners, Reed, was in the process of a divorce in 2000. Initially, Verladia Reed hired Attorney Carole Chiamp as her divorce counsel in Wayne County Circuit Court. The case was not assigned to Judge Harwood.

38.     Equestrian Estates was given a trial date in the condemnation case under Judge Harwood in 2000. Judge Harwood refused to honor the trial dates and held the case up for more than three (3) months even though Plaintiffs and Defendants in the condemnation action were demanding to proceed Equestrian Estates partners were perplexed as to why Judge Harwood did not seek to resolve the case or go forth with the trial date or with any hearings.

39.     A Motion to Recuse Judge Harwood was filed. Judge Harwood recused herself from the Equestrian Estates condemnation proceedings over the 227 acres and Carole Chiamp withdrew as Ms. Reed's divorce lawyer in the divorce proceeding. The condemnation case was assigned to Judge Arthur Lombard in 2001.

40.     Attorney Carole Chiamp referred Verladia Reed to attorney Sharon LaDuke to become her divorce lawyer. Carole Chiamp transferred her files over to Sharon LaDuke of the Jaffe Firm. The partnership's Equestrian development plan concepts and tax records with K-1's were given to Carole Chiamp, which were transferred to Attorney Sharon LaDuke.

41.     Sharon LaDuke never disclosed to Equestrian Estates or any of its limited partners, even during the deposition of Mr. Reed over a 3 day period, that she was ever interested in seeking to allege that Equestrian Estates did not own the property or deprive Equestrian Estates of its lawful interest during the entire discovery period or pretrial divorce proceedings. Equestrian partnership, corporation or their members were not joined as parties in the divorce proceedings as required by MCR 3.411(h).

42.     Defendants Sharon LaDuke, Jason Horton, Kathleen MacDonald, Lawrence Dudek and Howard Schwartz secured documents of Mr. Reed's interest from the divorce proceedings involving the partnership such as: (1) Equestrian Estates tax returns for 10 years, (2) partnership agreement, (3) assignment of AIIR interest, (4) Equestrian Estates Partnership Warranty Deed, (5) title work, (6) payment checks of the partners' interest. In lieu of the aforementioned documents, Sharon LaDuke contrived directly or indirectly with Kathleen MacDonald to sell Equestrian Estates' interest to Sharon LaDuke's firm's client by the way of Jason Horton, a client, and Lawrence Dudek, his attorney in lieu of evidence of Plaintiff's ownership interests. The properties were sold to Sharon LaDuke's client, Diversified Properties, and is still pending due to a bankruptcy petition involving one Plaintiff, the limited partnership.

17

43.     The evidence provided above by Plaintiffs was not admitted by Judge MacDonald. In the U.S. Bankruptcy Court case filed by Equestrian Estates Ltd. Partnership, all of the documents were admitted as evidence by Judge Walter Shapero.

44.     A motion was filed by Attorney Walter Pookrum in April 2004 with Kathleen MacDonald's court for evidentiary inquiry into the relationships among Jaffe Raitt law firm (Sharon LaDuke), court appointed receiver (Jason Horton) and the prospective purchaser (Diversified Properties) of the marital estate real property re: fraud or misrepresentation (Exhibit E).

45.     A motion was filed to recuse Kathleen MacDonald in June 2004.

46.     Kathleen MacDonald refused to hear either motions for recusal and the motion to inquire into the relationship of the parties re: fraud.  Mr. Reed's divorce counsel Walter Pookrum withdrew from the file in June 2004 while the motion for inquiry had been pending for several months (Exhibit E). MacDonald voluntarily withdrew the limited partners' motion for inquiry into the relationships of the parties without their permission after it was pending in her court for more than 90 days.

47.     Clarence Tucker in June 2004 replaced Walter Pookrum as counsel, and the partnership's counsel, Robert Reed, refiled the motion for an evidentiary hearing for inquiry into the relationships. MacDonald refused to hear the matter again after it had been on her docket for six (6) weeks.

48.     After a six month period, Judge MacDonald stated that she could not hear the motions for inquiry and recusal because of the bankruptcy stay.

49.     During the bankruptcy stay, MacDonald violated the bankruptcy stay and carried out several court orders involving Plaintiffs' properties.  Equestrian Estates Ltd. Partnership filed as an Intervener a "Motion for Inquiry Into Relationship" again before Judge MacDonald.

50.     *Jason Horton, Sharon LaDuke and Lawrence Dudek were complacent and confident and never filed a response to the motion of fraud or inquiry into the relationships that was filed and*

18

***pending for 6 months.*** After Kathleen MacDonald was removed from the case on January 1, 2005, Defendants finally submitted a response to the fraud inquiry after 6 months.

51.     Kathleen Macdonald approved a sale price totaling $795,000 after her "court appointed" appraiser appraised the property for nearly $3 million dollars. A bona fide buyer before the sale submitted a $4 million dollar offer to Kathleen MacDonald, Sharon LaDuke and Jason Horton. All the aforementioned parties refused to accept the $4 million dollar offer including Ms. Reed represented by Sharon LaDuke. The sale price was less than 600% of the appraisal value, and 1000% plus less than market value. When Plaintiff, Equestrian Estates, intervened and objected to the sale, Kathleen MacDonald stated ***"I do not want to hear this. I heard it before."*** MacDonald questioned the receiver's attorney and Ms. LaDuke "why did you let them intervene?" (Exhibits I and N)

52.     The Defendants have conspired in every manner to maliciously extort and defraud by design to confiscate Plaintiffs' land by any illegal means in using the court system, agencies and their relationships.

53.     Kathleen MacDonald refused to recuse herself from the divorce post judgment proceedings when a judicial tenure complaint was filed against her by Equestrian Estates' general partner Dr. Leroy Johnson and limited partner Lawrence Coleman involving their interests during the post judgment period. The complaint remained with the board review for several months. The Judicial Tenure Board refused to act, and after a delayed period, responded that the complaint matter is in the Court of Appeals and they could not act on it at this time. Neither Plaintiffs', Equestrian Estates partnership's and corporation's, concerns or claims were filed in any court of Michigan until now.

## C.     SCHEME AGAINST EQUESTRIAN ESTATES II LTD. CORPORATION

54.     The Equestrian Estates Corporation, owner of 156 acres, was not a party to the divorce proceeding nor were the shareholders. Kathleen MacDonald issued a court opinion and order

19

confirming that Equestrian Estates Corporation is not a party to the divorce proceeding. Thereafter, Kathleen MacDonald, without a hearing signed a supplemental order to the divorce judgment which encumbered and enjoined Equestrian Estates' interest for nearly 3 years, under the receivership, authorizing Jason Horton to sell the Equestrian Estates' property, while Plaintiffs remained non-parties to the action, and while no notice or jurisdiction had been respectively served or established.

55.     Mr. Rick Frazier, an Equestrian Estates shareholder advised the court and produced his lifetime investment, checks of six figures and stock certificate.  Kathleen MacDonald still ordered his interest as part of the marital estate in the property to be sold indicating that "evidence was not credible".  Judge MacDonald advised the parties that she would take the evidence under advisement and never admitted the evidence until the trial was over several months later.

55.     Jason Horton, Sharon LaDuke and Lawrence Dudek were aware of the third parties' interest but impeded and interfered with Plaintiffs' rights derailing Plaintiff's joint plan for a major development with the limited partners of Equestrian Estates Ltd. Partnership.

57.     The corporation along with the limited partner received several offers ranging in excess of $4 million.  Defendants interfered and slandered Plaintiffs' title interests and blocked co-developers and buyers from participating with Plaintiffs.

58.     The corporation and shareholders have irreparably suffered damages, and have been kept from reaping any substantial return from their investment, and have been severely damaged by Defendants' malicious conduct in interfering with the owners' real estate project.  Plaintiffs' land was released 3 years later from the Circuit Court disabling Plaintiffs from making land contract payments and causing forfeiture of its land contract interests.

### D.   SCHEME AGAINST LAWRENCE COLEMAN

59.   Coleman acquired his individual interest in the 10 acres parcel of land by a land contract with the Michigan Metro Girl Scout Council on October 31, 1984.

60.   Lawrence Coleman is the owner in fee and was in control of a lake frontage real estate parcel adjacent to the Equestrian Estates' site. Coleman owns 50% of the property in fee simple and 50% of his land interest was assigned to Equestrian Estates Ltd. as a partnership to receive a limited partner status. Equestrian Estates is a Michigan limited partnership comprised of Dr. Leroy Johnson, Dr. Oswald Bostic, Gregory J. Reed and Lawrence Coleman.

61.   On May 16, 2003, one of the Equestrian Estates partners, Gregory J. Reed was divorced. Sharon LaDuke, Kathleen MacDonald never joined Coleman as a party, MCR 2.203, but were aware of his individual interest and as a limited partner of Equestrian Estates Ltd. Partnership. Sharon LaDuke and Kathleen MacDonald received the partnership's tax returns, title work and other related documents of the partnership and was aware of Coleman's and the partners' interests.

62.   Coleman appeared in court as a witness in the divorce proceedings to demonstrate his interest, produced checks and his land contract from the Girl Scout Council of the 10 acres and assignment of 5 acres to Equestrian Estates.

63.   Sharon LaDuke also produced title work in the divorce court proceedings that showed Coleman's interest in the partnership and Coleman's assignment.

64.   Kathleen MacDonald ignored the document and title work evidence and fabricated an Opinion and Order, judgment and order that Coleman did not produce any credible evidence and denying Coleman's interest in the property (Exhibits D and L). When the partnership filed bankruptcy in a subsequent hearing the same evidence was admitted by Judge Walter Shapero of U.S. Bankruptcy Court. Sharon LaDuke's firm, Jason Horton and Lawrence Dudek argued in the U.S. Bankruptcy Court

that Lawrence Coleman has a 5 acre interest. However, Jason Horton, Lawrence Dudek and Sharon LaDuke's firm (Jaffe Raitt) initiated the sale of Coleman's property when the subject property was before Judge Kathleen MacDonald.

65.     Kathleen MacDonald unlawfully issued an order and opinion to deprive and sell Coleman's land, a nonparty of the divorce proceeding, and appointed Horton to sell Coleman's land and interest in disregard of MCR 2.203 and 3.411(h) and the United States Constitution.

66.     Kathleen MacDonald, Sharon LaDuke, Jason Horton, Lawrence Dudek and Howard Schwartz were aware of Coleman's individual interest (See court transcript Exhibit I). Dudek's independent research disclosed Coleman's interest to Jason Horton (Exhibit J). Defendants unlawfully prepared a deed, sales papers, court documents and abused the court system to deprive Coleman of his rights, title to the property and entered into a sale arrangement with Bruce Berskey for less than 375% of the land's market value.

67.     Prior to the sale, Dudek advised Horton of his legal challenges to sell Coleman's land without clear title (Exhibit J). Dudek knowingly and willfully understood that Horton as a receiver could not lawfully complete the sale without Kathleen MacDonald being the gatekeeper over the sale process involving Plaintiffs' land (Exhibit J) However, Lawrence Dudek, Sharon LaDuke, Jason Horton and Howard Schwartz proceeded to do so.

68.     To complete any and all sale transactions of the land, 227 acres, Kathleen MacDonald issued an order compelling the divorced former general partner Gregory J. Reed under duress to sign deeds to Plaintiffs' property including Coleman's interest over to the buyer as if it was a part of the Reeds' marital estate. If not, he shall be fined $1,000 a day.

69.     Procedurally, a trustee or receiver appointed by the court has no right to sell property without the owner's involvement. Kathleen MacDonald, Sharon LaDuke, Jason Horton and Lawrence

Dudek knew there were third parties interests but used coercion tactics against the former general partner to sign the deeds to get Plaintiff's interest.

70.    Coleman and the limited partners filed bankruptcy for Equestrian Estates Ltd. Partnership to stop Kathleen MacDonald's and Defendants' illegal action and orders. Also, to stay the plan put in motion by MacDonald, LaDuke, Horton, Dudek and Schwartz to consummate the sale.

### E.    KATHLEEN MACDONALD'S SCHEME

71.    Kathleen MacDonald is a judge in Wayne County Circuit Court during the year of 2000 - 2004. She was assigned to the Reed v. Reed divorce case.

72.    The parties had executed a prenuptial agreement in 1975 to dispose of their marital property in the event of a divorce. MacDonald abused her discretion per the Court of Appeals decision when she set aside the agreement and proceeded to conduct a three week trial to pursue the Plaintiffs' land property, as a marital asset of the former general partner.

73.    During the trial, the only parties involved in the divorce proceeding of Reed v. Reed were Verladia Reed and Gregory J. Reed. There were no other parties in the divorce proceedings. A judgment only binds the parties to the action, MCR 3.411(h). However, MacDonald and LaDuke were aware of the law and the U.S. Constitution and still acted to deprive Plaintiffs' of their property interest.

74.    Kathleen MacDonald in the divorce action issued the following orders and rulings:

      a.    Entered an unlawful "supplemental order" without notice or a hearing, authorizing the sale by the receiver and enjoining Plaintiffs, said documents were prepared and/or reviewed only by Horton and LaDuke, only, prior to entry.

      b.    Ordered Sharon LaDuke attorney fees of $150,000 against Reed without an invoice or a bill statement. Sharon LaDuke initially requested $50,000 and arbitrarily requested $150,000 for attorney fees at the closing without a bill or invoice. MacDonald complied with LaDuke's request without a

bill statement over the attorney's objection or an evidentiary hearing to ascertain the validity of the debt, if any.

c.  Plaintiff, Equestrian Estates, a nonparty in the divorce case had another case pending in circuit court in Wayne County. Kathleen MacDonald issued an unlawful order over the nonparties: Equestrian Estates, partnership and corporation, to pay $275,000 to Verladia Reed out of Equestrian partnership's proceeds held by the condemnation court under Judge Arthur Lombard, over monies of Equestrian Estates. Judge Arthur Lombard released the $275,000 in funds of Equestrian Estates pursuant to Kathleen MacDonald's unlawful order without jurisdiction.

d.  Quashed attorney and professional liens filed for services rendered in the Equestrian Estates condemnation case and presented to Judges MacDonald and Lombard by certain attorneys and accountants who provided services to Plaintiffs. Plaintiff Equestrian Estates recognized the lawful lien against the condemnation proceeds. Kathleen MacDonald refused to honor the parties' lien and discriminatingly honored only one attorney's lien of Kenneth Davies'.

e.  During the divorce proceeding, several partners as witnesses appeared before the court and produced "credible evidence" such as checks, deed, assignment of AHR, Warranty Deed and tax returns of 10 years. Kathleen MacDonald in 2002 ruled the evidence was not credible. U.S. Bankruptcy court in 2004 admitted the evidence as credible. (EXHIBIT P)

f.  Attorney Daniel Minkus appeared as a witness in the divorce proceeding representing the Girl Scouts and provided the court a copy of the Girl Scouts' deed issued to Equestrian Estates' Ltd Partnership on December 4, 1997 and the assignment of AHR's interest to Equestrian Estates Ltd. Partnership. MacDonald refused to recognize or admit the Deed and the AHR Assignment. (EXHIBIT Q – Walter Pookrum's Motion for Inquiry) MacDonald ruled that Minkus' file was admitted into evidence, but never admitted the deed or the assignment of AHR into the court record.

24

Sharon LaDuke apologized to the court that she was not aware of the assignment to Plaintiff. However, both proceeded to ignore the assignment and acted as if the property was a part of the marital estate.

MacDonald's acts irreparably damaged Plaintiffs and caused them extreme costs and emotional pain in addressing their interests.

## COUNT I

### Violation of the Due Process of the Fifth Amendment of the U.S. Constitution

75.    Plaintiffs adopt and incorporate by reference each and every preceding paragraph as if fully set forth herein.

76.    The Fifth Amendment of the U.S. Constitution provides in relevant part: "No person shall be deprived of life, liberty, or property, without due process of law."

77. Defendants unlawfully conspired to sell the 227 and 156 acre parcels without Plaintiffs' knowledge and consent and deprived Plaintiffs of their possession and use of their real property without due process of law, in violation of the Fifth Amendment.

78.    Plaintiffs have constitutional rights not to be deprived of their personal, lawful property without due process of law. The prohibition provides for either summary confiscation or interference with the use of lawful property without any statutory basis or procedural protections.

79.    The denial of Plaintiffs' constitutional rights have caused Plaintiffs irreparable harm.

## COUNT II

### Violation of the Equal Protection Clause of the
### Fourteenth Amendment to the United States Constitution; 42 USC § 1983

80.     Plaintiffs adopt and incorporate by this reference each and every preceding paragraph as if fully set forth herein.

81.     Defendants have treated Plaintiffs in a discriminatory and punitive way that is not applied to other groups and individuals who own real property.

82.     Defendants' actions thus constitute a violation of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

83.     Defendants have caused Plaintiffs irreparable harm as a result of their acts and unlawful conduct.

## COUNT III

### Fraudulent Conveyance

84.     Plaintiffs adopt and incorporate by this reference each and every preceding paragraph as if fully set forth herein.

85.     The transfers and/or sale of Plaintiffs' 227 and 156 acre parcels for the benefit of Defendants' clients, associates and/or friends are fraudulent conveyances initiated by Kathleen MacDonald, Sharon LaDuke and Defendants, with knowledge of Plaintiffs' lawful rights, title and equitable interests and they ignored and disregarded Plaintiffs' rights (Exhibits E and N).

86.     Defendants have consummated an illegal scheme to fraudulently transfer Plaintiff's 227 and 156 acre parcels for the benefit of Sharon LaDuke's firm's clients, associates and friends without:

26

(1) due process, (2) Plaintiffs' consent, (3) notices to the parties and (4) receiving a reasonably equivalent value in exchange for the transfer or sale at the current appraised value of Thirty Thousand ($30,000.00) Dollars plus per acre in 2004 versus Defendants' approved sale price at Three Thousand Five Hundred ($3,500.00) per acre even if the Plaintiffs wanted to sell their interests, which they did not.

87.     The transfers of the property initiated by Kathleen MacDonald, Sharon LaDuke and Jason Horton were fraudulently executed to extort Plaintiffs of their properties (Exhibits E and N).

88.     Plaintiffs have and will continue to suffer irreparable injuries if the Defendants' fraudulent transfers are not voided, prevented or set aside in honor of Plaintiffs' lawful deed, claims and interests.

89.     Plaintiffs have no adequate remedy at law and therefore are entitled to relief, including avoidance of the transfers or obligations and an injunction against the sale of their real property by Defendants.

**COUNT IV**

**Quiet Title or Declaratory Relief**

90.     Plaintiffs adopt and incorporate by this reference each and every preceding paragraph as if fully set forth herein.

91.     Plaintiffs have equitable rights and are in possession or control of 227 and 156 acres totaling 383 acres located in Springfield Township and described in (Exhibits A and C).

92.     Plaintiffs' interests are based on a Warranty Deed and issued by the Michigan Metro Girl Scout Council and Marlowe Limited Partnership, respectively (Exhibits A and C).

93.     Defendants, MacDonald, Horton, LaDuke, Dudek and Schwartz publicly and falsely represented to prospective purchasers that the property is a part of the Reed's marital estate and offering

the 383 acre parcels for sale pursuant to a divorce judgment affecting nonparties to the divorce which dissolved the marriage of Gregory J. Reed and Verladia T. Reed. Plaintiffs were not parties during the divorce proceedings nor did Defendants seek to inform Plaintiffs or join them as parties to the divorce proceedings in violation of MCR 3.411(h).

94.     Defendants knew pursuant to their professional knowledge, conduct and training that their acts and claims are inconsistent with Plaintiffs' interests in the 383 acre parcels or 227 and 156 acres that created a cloud on Plaintiffs' titles to the 227 and 156 acres.

95.     Plaintiffs seek to quiet title and judicially define the competing parties respective interests in the property.

## COUNT V

### Slander of Title

96.     Plaintiffs adopt and incorporate by this reference each and every preceding paragraph as if fully set forth herein.

97.     Defendants maliciously published false statements which disparaged Plaintiffs rights in the 383 acre parcel with the intent to harm Plaintiffs' valuable interest in property, and Defendants either recognized or should have recognized that the publication would damage Plaintiffs' interests.

98.     Plaintiff, Equestrian Estates Ltd. Partnership, filed bankruptcy on February 20, 2004 to protect its lawful interest due to Defendants' unlawful acts to enjoin Defendants from completing transfers of their properties.

99.     Defendants' actions damaged Plaintiffs. including but not limited to, impairment of vendibility and litigation costs exceeding millions of dollars.

28

## COUNT VI

### Tortious Interference With Business Relationships

100.   Plaintiffs adopt and incorporate by reference each and every preceding paragraph as if fully set forth herein.

101.   Plaintiffs have a business expectancy with a probability of future economic benefit that exceeded eight figures in dollars.

102.   Defendants knew or had reasons to know of Plaintiffs' expectancy from Plaintiffs' ownership of the land.

103.   Defendants intentionally interfered with Plaintiffs' business expectancy causing or inducing a breach or termination of the relationship or expectancy causing Plaintiffs losses in substantial offers in excess of eight figures in dollars.

104.   Absent Defendants' intentional misconduct, it was likely that Plaintiffs would realize the expectancy of a higher return from their properties by sale and/or development.

105.   Defendants' intentional misconduct resulted in actual multiple damages to Plaintiffs.

## COUNT VII

### Abuse of Process

106.   Plaintiffs adopt and incorporate by reference each and every preceding paragraph as if fully set forth herein.

107.    Defendants' greed is the ulterior purpose of extortion in depriving Plaintiffs of their land and asserting claims of interest in Plaintiffs' 383 acres parcel.

108.    Defendants, Kathleen MacDonald, Sharon LaDuke, Jason Horton, Attorney Lawrence Dudek, Howard Schwartz and other court officials, attorneys and staff persons performed unlawful acts in the use of their offices and the adjudicatory process not proper in the regular prosecution of a case in the Wayne County Circuit Court proceedings and violated 18 U.S.C. 1961, Michigan Laws, MPRC 3.4, 4.1 and 8.4., MCR 3.114(h), etc. (Exhibits E and N)

109.    Defendants' conspired and unlawful acts irreparably damaged Plaintiffs.

## COUNT VIII

### Intentional Infliction of Emotional Distress

110.    Plaintiffs adopt and incorporate by reference each and every preceding paragraph as if fully set forth herein.

111.    Defendants have unlawfully deprived and interfered with Plaintiffs lawful rights of their property.

112.    Defendants' conduct is both extreme and outrageous because it involves the court system and has caused the citizens of this state not to have faith in the court system by the unlawful seizure, and court ordered sale of Plaintiffs' real property *without being parties to the court proceedings, without their knowledge, without due process and without their consen*t based on court proceedings to which Plaintiffs were not given notice of.

30

113.   Defendants intended and have caused Plaintiffs, limited partners and shareholders, emotional distress and acted with a reckless disregard for whether their conduct would cause Plaintiffs emotional distress.

114.   As a result of Defendants' conduct, Plaintiffs' members and shareholders suffered extreme emotional distress and extreme costs in protecting their rights, interests, ownership and lifetime investments and have been substantially damaged.

## COUNT IX

### Common Law/Fraudulent Deceit

115.   Plaintiffs adopt and incorporate by reference each and every preceding paragraph as if fully set forth herein.

116.   Defendants acts, schemes, misrepresentation, etc., constitute common law fraud under the law of the state of Michigan.

117.   Defendants acted out of greed, intentionally, willfully, wantonly, maliciously, for profit and without just cause or excuse.

118.   Plaintiffs suffered damages as a result of Defendants wrongful and intentional actions.

## COUNT X

### Breach of Fiduciary Duty
### Against Horton

119.   Plaintiffs adopt and incorporate by reference each and every preceding paragraph as if fully set forth herein.

120.   Horton by virtue of his position as the receiver of the court, at all relevant time owed a fiduciary duty to the parties, and the creditors of the marital estate, and held a position of trust,

confidence and responsibility in the discharge of his duties as receiver with a view to the best interest of the above mentioned parties.

121.    Horton's self dealing and undisclosed personal interest, and relationship with the Jaffe firm by virtue of its association to Redico, his appointment as receiver at the request of the Jaffe Firm, where he was an undisclosed client, and his scheme to enter into a sham sale to benefit yet another client of the Jaffe Firm, created a breach of fiduciary duty .

122.    Horton intentionally used his position to conceal the impropriety of the sale transactions he proposed. Thereafter, he intentionally misrepresented the validity of the sale, and did so several times under oath.

123.    Plaintiffs have been severely injured as a result of the breaches of fiduciary duty by Horton.

**COUNT XI**

**Conduct and Participation in a RICO *Enterprise* 18 USC § 1961(4)
through a *Pattern of Racketeering Activity*
18 USC § 1961 (5); in violation of 18 USC § 1962(c)**

124.    Plaintiffs adopt and incorporate by reference each and every preceding paragraph as if fully set forth herein.

125.    At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did associate with a RICO *enterprise* of individuals who were associated in fact and who engaged in, and whose activities did affect interstate and foreign commerce. Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO *enterprise* through a *pattern of racketeering activity*, all in violation of 18 U.S.C. §§ 1961(4), (5) and 1962(c). All Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 USC §§ 1961 (1)(A) (bribery/corruption of

the receiver) and (B) §§ 1341 and 1343 (mail and wire fraud) and § 1503 (obstruction of justice), and did so in violation of the RICO law at 18 USC § 1962 (c) (Prohibited activities) as follows:

(1)     For the purpose of executing and/or attempting to execute their

scheme to defraud Plaintiffs by means of corruption of the receiver, the Defendants in violation 18 USC § 1961 (1) (A), did insinuate and maintain an undisclosed and corrupt relationship with the receiver, one of their own clients who was also an executive employee of Redico, the Jaffe Firm's principle named partners: Ira Jaffe's, management company, and was otherwise under the direction and control of Ira Jaffe, Esq., and thereafter directed the benefits of the corrupt bargain to the purchaser Diversified Property Group, LLC yet another client of the Jaffe firm.

(2)     For the purpose of executing and/or attempting to execute their scheme to defraud Plaintiffs by means of false pretenses, representations or promises, the defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories for mail matter and things to be sent or delivered by the Postal Service, and received matter and things therefrom, including but not limited to agreements, transactional documents, correspondence, faxes, and other materials.

(3)     For the purpose of executing and/or attempting to execute their

scheme to defraud  Plaintiffs by means of false pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire matters and things therefrom, including but not limited to agreements, correspondence, faxes, and

other materials.

(4)     In those matters and things sent or delivered by the Postal Service,

by wire, and through other interstate and international electronic media, Defendants falsely and fraudulently misrepresented and/or fraudulently concealed material facts from Plaintiffs and the court in violation of 18 U.S.C. §§ 1341 and 1343.

(5)     For the purpose of executing and/or attempting to execute their scheme to defraud Plaintiffs, Defendants engaged in corruption of the receiver, breached fiduciary duties, abused process and lied under oath, altered evidence, submitted false evidence, and violated court orders in violation of 18 USC § 1503.

Plaintiffs further allege that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they have calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 USC § 1962(c) *supra.* As set forth herein, the Defendants have engaged in a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5), by committing and/or conspiring to commit at least two (2)such acts of racketeering activity, as described herein, within the past ten years. Defendants have committed multiple acts of racketeering activity within such period. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including Plaintiffs. Defendant Ira Jaffe is vicariously liable where he is the supervisory/managerial individual who is responsible for the conduct of the two colluding entities: Redico and the Jaffe Firm.

## COUNT XII

### Conspiracy to Engage in a
### *Pattern of Racketeering Activity*:
### 18 USC § 1961(5); 18 USC § 1962(d)

126.    Plaintiffs adopt and incorporate by reference each and every preceding paragraph as if fully set forth herein.

127.    At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did conspire to acquire and maintain an interest in a RICO *enterprise* engaged in a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(b) and (d). At various times and places partially enumerated in Plaintiffs' *documentary material*, all Defendants did also conspire to conduct and participate in said RICO *enterprise* through a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(c) and (d). All Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized 18 USC §§ 1961(1)(A) (corruption/bribery of the receiver) and (B) §§ 1341 (wire fraud) and 1503 (obstruction of justice) in violation of 18 U.S.C. 1962(d).

128.    Defendants and their agents have been joined in their conspiracies to violate 18 U.S.C. § 1962(c) by various third parties not named as Defendants herein.

129.    Plaintiffs further allege that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of 18 U.S.C. 1962(d) Defendant Ira Jaffe is vicariously liable where he is the supervisory/managerial individual who is responsible for the conduct of the two colluding entities: Redico and the Jaffe Firm. Defendants agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), and agreed to commit overt acts and predicate acts, as alleged in this Complaint, to effectuate that conspiracy. Defendants were aware that their acts were part of an overall pattern of racketeering

activity.

## RELIEF REQUESTED

***Wherefore***, pursuant to the statutes at 18 USC § 1964 (a) and (c), Plaintiffs request a judgment against all named Defendants as follows:

1.      Issuing an Order enjoining Defendants from selling Plaintiffs' property;

2.      Compensatory damages in excess of $30,000,000;

3.      Punitive damages;

4.      Declaratory and injunctive relief;

5.      Reasonable attorney's fees;

6.      Together with all costs and expenses and such other further relief as the court deems proper;

7.      That Plaintiffs' title in and to Plaintiffs' above-described property be quieted, that it be adjudged that the property is not an asset of the marital estate;

8.      Demands a temporary restraining order, a preliminary injunction, and a permanent injunction prohibiting Defendants their agents, servants and employees from unlawfully selling the property;

9.      Award compensatory, punitive and exemplary damages against Defendants in favor of Plaintiffs in a sum not yet determinable in excess of eight figures.  That all Defendants pay to Plaintiffs treble (triple) damages, for any gains, profits, or advantages attributable to all violations of 18 USC § 1962(d) *supra*, according to the best available proof.

10.     That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 USC § 1962(d) and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, for the benefit of Plaintiffs, its heirs and assigns.

36

## JURY DEMAND

Plaintiffs demand a trial by jury with respect to all issues so triable.

Date: 3/15 , 2006

RESPECTFULLY:

BY: Francois M. Nabwangu (P61338)
Attorney for Plaintiffs
13255 Lakepoint Blvd
Belleville, MI 48111
(734) 485-8656

3C:\Data\Equestrian\Rico\Rico Complaint 3-14-06.doc

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS** Equestrian Estates Ltd. Partnership, a Michigan Limited Partnership, Equestrian Estates II Ltd., a Michigan Corporation, Limited Partners, Shareholders, and Heirs

**(b)** County of Residence of First Listed Plaintiff   Oakland
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Francois M. Nabwangu
13255 Lakepoint Blvd. Belleville, MI 48111
734-485-8656

**DEFENDANTS** Jaffe Raitt Heuer & Weiss PC, Ira Jaffe, Sharon LaDuke, Lawrence Dudek, Howard Schwartz, Diversified Properties Group, LLC, Redico Management, Inc. and JOHN DOES

County of Residence of First Listed Defendant   Oakland
(IN U.S. PLAINTIFF CASES ONLY)

Case: 2:06-cv-11262
Assigned To: Hood, Denise Page
Referral Judge: Capel, Wallace
Filed: 03-24-2006 At 04:37 PM
CMP EQUESTRIAN ESTATES V JAFFE RAIT
T HEUER ET AL (AWT)

## II. BASIS OF JURISDICTION (Select One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Select One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

POSSIBLE COMPANION CASE

## V. ORIGIN (Select One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☒ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 35,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)  JUDGE  Julian Cook   DOCKET NUMBER  05-73200

DATE 8/15/06   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

UANT TO LOCAL RULE 83.11

Is this a case that has been previously dismissed?   [X] Yes

[ ] No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.        Other than stated above, are there any pending or previously
          discontinued or dismissed companion cases in this or any other       [X] Yes
          court, including state court? (Companion cases are matters in which   [ ] No
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

If yes, give the following information:

Court:   Federal District Court Eastern District of Michigan

Case No.:   05-73494

Judge:   Hon. Arthur J. Tarnow

Notes :